## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

FireBlok IP Holdings, LLC,

      Plaintiff,

    v.

Hilti, Inc. and RectorSeal, LLC,

      Defendants.

Case No. 3:19-cv-50122

Honorable Iain D. Johnston

## MEMORANDUM OPINION AND ORDER

Plaintiff FireBlok IP Holdings, LLC ("FireBlok") brings this suit under the Illinois Uniform Deceptive Trade Practices Act, the Illinois Consumer Fraud Act, and the federal Lanham Act against Hilti, Inc. ("Hilti") and RectorSeal, LLC ("RectorSeal"). Before the Court is Hilti's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and RectorSeal's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, both motions [120, 125] are granted in part and denied in part.

### I.    Background

The factual allegations recited here are taken from FireBlok's second-amended complaint. Dkt. 108. In 2001, Elmer Algin Rose invented and patented a system and method for suppressing fire in electrical boxes using intumescent material. FireBlok, which now owns that patent, markets and sells products based on that patent. Through a licensing agreement, Hilti also markets and sells a

1

product based in part on that same patent; it is known as the Firestop Box Insert. In this way, FireBlok and Hilti sell competing products.

The labels of both products include the Underwriter Laboratories ("UL") certification mark. Hilti says it doesn't design the label. It instead informally collaborates with RectorSeal for the final design and provides it with Hilti's company branded artwork for the Firestop Box Insert. RectorSeal also sells a product known as the Metacaulk Box Guard. Hilti was authorized to use the UL mark on its label through UL's Multiple Listing service, which basically allows one product to piggyback off another identical product that is sold under another brand name. Through this process, the Firestop Box Insert was Multiple Listed with RectorSeal's Metacaulk Box Guard, and thus—for a time—authorized to use the UL certification mark.

On August 1, 2008, RectorSeal sent UL a letter withdrawing the Multiple Listing because it would no longer be manufacturing the Firestop Box Insert for Hilti, which was a requirement of the Multiple Listing program. UL then allegedly withdrew the Multiple Listing, and therefore Hilti's authority to use the UL mark on its labels. On January 17, 2019, RectorSeal sent another letter to UL, this time requesting that Hilti's Firestop Box Insert be added back to the Multiple Listing with RectorSeal's Metacaulk Box Insert. That request was allegedly granted on January 28, 2019, and Hilti regained its authority to use the UL mark on its Firestop Box Insert labels. Even though Hilti allegedly had no authority to use the UL mark between August 2008 and January 2019, FireBlok alleges that Hilti used

that mark continuously throughout that period. *Id.* ¶ 45 ("Hilti's Firestop Box Insert contained the UL Certification mark continuously from 2006.").

FireBlok alleges that both defendants were responsible for placing the UL certification mark on the Firestop Box Insert during the period in which UL no longer authorized its use. Because of this unauthorized use, FireBlok contends that customers were likely confused into thinking that UL certified the Firestop Box Insert when it did not.

## II. Procedural History

FireBlok originally filed this action as a six-count suit on May 22, 2019, alleging violations of the Uniform Deceptive Trade Practices Act (UDTPA), 815 Ill. Comp. Stat. § 510/1 *et seq.* and the Illinois Consumer Fraud Act (ICFA), 815 Ill. Comp. Stat. § 505/1 *et seq.* Dkt. 1. FireBlok's original complaint and its first-amended complaint named only Hilti as a defendant. Dkts. 1, 36. Based on the first-amended complaint, Hilti moved the Court to dismiss all of FireBlok's claims against it. Dkt. 47. After briefing had concluded, FireBlok moved the Court to voluntarily dismiss counts I, III, V, and VI of the first-amended complaint because of activity in parallel patent litigation in a Texas federal court. *See generally Fireblok IP Holdings, LLC v. Hilti, Inc.*, No. 2:19-cv-00023, 2020 U.S. Dist. LEXIS 34477 (E.D. Tex. Feb. 27, 2020), *aff'd*, 855 F. App'x 735 (Fed. Cir. 2021) (explaining the patent licensing relationship). Hilti had won summary judgment in that case with the court holding "that Hilti's purchase under a license [was] a complete defense to patent infringement." Dkt. 61, at 2. Thus, because the parties both

3

agreed to dismiss those counts, the Court did so. Dkt. 62. That left only counts II and IV, which were still before the Court on Hilti's motion to dismiss. Dkt. 47. On September 8, 2020, the Court entered an order denying Hilti's motion to dismiss those claims. Dkt. 78. In those claims, FireBlok asserted that Hilti's use of the UL mark violated the UDTPA and the ICFA. But the Court denied Hilti's motion to dismiss because Hilti's undeveloped argument amounted to waiver. *Id.* at 4. Hilti had failed to cite any supporting case law and had not pinpointed the areas in which it found FireBlok's claims deficient. *Id.*

On April 30, 2021, FireBlok filed its second-amended complaint. Dkt. 108. That complaint, now the operative complaint, added RectorSeal as a defendant. It also added a new count (Count VII), which alleges that both Defendants violated the Lanham Act, 15 U.S.C. § 1125(a). Other than adding RectorSeal and the Lanham Act claim, the second-amended complaint "substantially maintained" the same factual allegations from the first-amended complaint. Dkt. 142, at 5. RectorSeal moves the Court to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. 120. Hilti moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

As an initial matter, FireBlok contends that the Court should deny Hilti's motion to dismiss FireBlok's claims under the ICFA and the UDTPA because the Court already ruled that Hilti had waived its argument. Dkt. 142, at 5–7. That argument is unavailing. The Court denied Hilti's prior motion to dismiss on the grounds that it failed to develop its argument. Dkt. 78, at 4. But FireBlok cites no

4

legal authority for the implicit proposition that such a waiver applies to future motions. Thus, the Court will not consider FireBlok's waiver argument here.

### III.    Legal Standard

Under Rule 8, the plaintiff must have alleged facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This means that a plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009). Some claims, however, are subject to heightened pleadings requirements. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Federal Rule of Civil Procedure 9(b).

The Court accepts as true all the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. "But the proper question to ask is still '*could* these things have happened, not *did* they happen.'" *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010) (emphasis in original)).

The procedure on a motion for judgment on the pleadings depends on whether the Court must convert the motion to one for summary judgment. If the motion relies on matters outside the pleadings, the Court will convert it to a motion for summary judgment, employ the rules set forth in Federal Rule of Civil Procedure 56, and give the parties reasonable time to present evidence. Fed. R. Civ. P. 12(d). If the Court need not rely on matters outside the pleadings, however, the standard on a Rule 12(c) motion is the same as the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). The pleadings include the complaint, the answer, and any exhibits attached to them. *Id.* at 312 (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)).

### IV. Illinois Uniform Deceptive Trade Practices Act

In Count II, FireBlok asserts that Hilti and RectorSeal violated the Illinois Uniform Deceptive Trade Practices Act by affixing the UL certification mark to the Firestop Box Insert label during the period in which the product was allegedly not UL certified. Dkt. 108, ¶¶ 59–60. FireBlok contends that this caused a likelihood of confusion and that it is entitled to an injunction. *Id.* ¶¶ 61, 65.

Under the Act, "A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable. Proof of monetary damages, loss of profits or intent to deceive is not required." 815 Ill. Comp. Stat. § 510/3. Thus, a plaintiff can obtain an injunction

under the Deceptive Practices Act but must properly allege a nonspeculative likelihood of future harm. *Guajardo v. Skechers USA, Inc.*, No. 4:19-cv-04104, 2021 U.S. Dist. LEXIS 179774, at *13 (C.D. Ill. Sept. 21, 2021). In *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014), the Seventh Circuit explained that the plaintiff had failed to allege a likelihood of future harm sufficient to sustain a claim for injunctive relief. The court explained that because the plaintiff was now aware of Joseph A. Bank's practice, he was unlikely to be harmed by it in the future. *Id.* Furthermore, the court noted that past exposure to the defendant's conduct "does not in itself show a present case or controversy regarding injunctive relief."[1] *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).

Both Hilti and RectorSeal argue that FireBlok "alleges only past harm, and no threat of future misrepresentations exists that injunctive relief would cure." Dkt. 126, at 13; Dkt. 121, at 11. In support, they correctly point out that FireBlok "concedes that the Hilti Firestop Box Insert has been and is currently eligible to bear the UL mark for the last two years." Dkt. 126, at 13; Dkt. 121, at 11.

FireBlok responds that it has alleged ongoing harm. "FireBlok specifically alleges that 'Plaintiff has been, *and continues to be* harmed by Defendants' deceptive trade practices.'" Dkt. 141, at 14 (quoting Dkt. 108, ¶ 63 (emphasis in original)). FireBlok also asserts that because RectorSeal expressly requested, via a

---

[1] In citing *O'Shea* and using the case or controversy language, the *Camasta* court referenced Article III's requirement that federal courts hear only live cases or controversies. Thus, in Uniform Deceptive Trade Practices Act cases, the requirement that the plaintiff is likely to suffer future harm comes from the black letter law of the statute but also as a constitutionally mandated jurisdictional requirement.

letter, that the Multiple Listing be removed—thus removing Hilti's UL certification—the Court should "infer that RectorSeal may again cause UL's certification to be withdrawn." *Id.* FireBlok also asserts that given the "private label relationship between Hilti and RectorSeal," a reasonable inference arises that Hilti knew RectorSeal had removed the Multiple Listing. Dkt. 142, at 17. Furthermore, FireBlok contends that RectorSeal re-established the Multiple Listing, and thus Hilti's right to use the UL mark, "only after it was clear that FireBlok intended to file suit for patent infringement against Hilti." *Id.* Based on these assertions, FireBlok contends that nothing prevents the two Defendants from engaging in the same conduct in the future once this litigation has concluded. *Id.*

As the Seventh Circuit explained in *Camasta*, past harm is not necessarily evidence of future harm. So, the mere fact that Hilti and RectorSeal allegedly mislabeled the Firestop Box Insert product in the past does not mean they will do so again in the future. But in *Camasta*, the future harm was speculative because the plaintiff now knew about the deception and was less likely to be fooled by that deception again. Here, FireBlok has no control over the UL certification mark, and so it cannot avoid the deception like the plaintiff in *Camasta*. Still, the Firestop Box Insert has been eligible to bear the UL certification mark for two years. At this point, the suggestion that Hilti and RectorSeal might again allegedly mislabel the product is speculative. FireBlok contends that it is not speculative because timing suggests that RectorSeal re-established the Multiple Listing after it was clear that FireBlok intended to file the patent infringement case in Texas federal court. But

8

that case was about Hilti's use of FireBlok's patent, not the use of the UL certification mark. And FireBlok does not explain how a lawsuit on an independent theory affects the likelihood of future harm in this case. Thus, FireBlok merely speculates that it will be harmed in the future, and that is not enough under the statute. Because FireBlok's has not alleged a nonspeculative likelihood of future harm, it has not stated a claim under the Illinois Uniform Deceptive Trade Practices Act.

## V.    The "primarily and substantially" requirement

Both defendants also claim that FireBlok's complaint fails to satisfy the "substantially and primarily" requirement of *Avery v. State Farm Mutual Insurance Co.*, 835 N.E.2d 801, 853–854 (Ill. 2005). Thus, they conclude that FireBlok's claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud Act must fail. In *Avery*, the Illinois Supreme Court held that "a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* The rule also applies to claims under the Illinois Uniform Deceptive Trade Practices Act. *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011).

The *Avery* court illuminated several factors courts use to determine whether the plaintiff's claims allegedly occurred primarily and substantially in Illinois: "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the

9

item that was the subject of the transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions; (7) where the deceptive statements were made; (8) where payments for services where sent; and (9) where complaints were to be directed." *Van Zeeland v. McNally*, __ F. Supp. 3d __, 2021 U.S. Dist. LEXIS, at *21 (N.D. Ill. Mar. 31, 2021); *Avery*, 835 F.3d at 854–55.

Here, nothing in FireBlok's complaint satisfies *Avery*'s requirement that the transaction or transactions at issue occurred primarily and substantially in Illinois. According to FireBlok's second-amended complaint, it is a citizen of Georgia. Dkt. 108, ¶ 1. Hilti is a citizen of Oklahoma and Texas. *Id.* ¶ 4. And although FireBlok does not properly allege the citizenship of RectorSeal, it does allege that RectorSeal is an LLC formed under the laws of Delaware with its principal place of business in Texas. Thus, the first two factors weigh heavily against FireBlok. The third factor doesn't help FireBlok either. That factor contemplates the location in which the transaction occurred. But here, plaintiff is not a consumer that purchased the product. Instead, FireBlok is a competitor and alleges that the Firestop Box Insert is sold "throughout the United States, including in this district." *Id.* ¶ 16. Thus, far from primarily and substantially arising in Illinois, the transactions are alleged to occur throughout the United States, and Illinois just happens to be one of those states.

The remaining factors, except the seventh, have no relevance in this context because the plaintiff was not a customer of either defendant. Because FireBlok is a

competitor, the claim does not arise from a contractual relationship. Lastly, the seventh *Avery* factor doesn't help FireBlok either. That factor contemplates the location in which the deception took place. But here, the deception is in the form of advertising and package labeling. And FireBlok alleges that Hilti and RectorSeal marketed the product throughout the United States, not primarily in Illinois. *Id.* ¶ 16. To be sure, the business decisions regarding market and labeling likely occurred at the Defendants' headquarters, but those locations are alleged to be in other states.

Thus, none of the *Avery* factors weigh in FireBlok's favor. Because the alleged facts giving rise to FireBlok's claims under the Illinois Consumer Fraud Act did not occur primarily and substantially in Illinois, the Court must dismiss that claim. And though the Court has already disposed with FireBlok's claim under the Illinois Uniform Deceptive Trade Practices Act, this analysis also applies to that claim and supplies an independent reason why this claim, as alleged, must fail.

## VI.   Lanham Act

In its second-amended complaint, FireBlok added a claim under the federal Lanham Act, 15 U.S.C. § 1125(a) (Count VII). Dkt. 108, ¶¶ 97–110. Section 1125(a) provides for a civil private right of action:

> (1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his

or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The statute "creates two distinct bases of liability: false association, §1125(a)(1)(A), and false advertising, §1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 123 (2014). FireBlok does not expressly state whether it claims false association or false advertising, but it appears to argue that the second-amended complaint sufficiently states both claims. Dkt. 142, at 4.

Hilti and RectorSeal argue that FireBlok has failed to state a claim under either subsection of 15 U.S.C. § 1125(a). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet that requirement, plaintiffs must allege the "who, what, when, where, and how: the first paragraph of any newspaper story." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). In other words, FireBlok must have alleged the identity of the person who violated the Act, when and where it happened, the content of the violation, and the method by which the fraud was communicated. *Id.* (quoting *Uni\*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). Because Hilti and RectorSeal couldn't determine which subsection FireBlok's claims arise under, they argued that FireBlok's complaint fails to satisfy either. But, for the following reasons, Hilti and RectorSeal have failed to meet their burden to show

the complaint's insufficiency. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency.").

### a. 15 U.S.C. § 1125(a)(1)(A)

Hilti and RectorSeal contend that FireBlok has not stated a claim under 15 U.S.C. § 1125(a)(1)(A), which provides a private right of action for false association. Dkt. 121, at 9; Dkt. 126, at 10; *Lexmark*, 572 U.S. at 123. In support, they argue that FireBlok does not own the UL certification mark and ownership of the trademark is necessary to recover under section 1125(a)(1)(A). They furthermore contend that FireBlok's allegation that customers were likely confused or mistaken are conclusory and without supporting factual allegations. Dkt. 121, at 8–9; Dkt. 126, at 10–11.

Nothing in the plain text of section 1125(a)(1)(A) requires trademark ownership. On the contrary, the text of the statute merely contemplates unfair competition that causes a likelihood that consumers will mistakenly believe the defendant's product is sponsored by, affiliated with, or otherwise endorsed by another entity. Rather than require the plaintiff own the certification mark, the plain text of the statutes gives a private right of action to "any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a). Federal courts have applied prudential standing requirements to limit the scope of those individuals that count as "any person" under the Lanham Act. Before the Supreme Court's decision in *Lexmark*, the Seventh Circuit applied a direct-competitor approach to determine whether a plaintiff had a right to sue under section 1125(a).

13

*Lexmark*, 572 U.S. at 124. But the Supreme Court rejected that test as being too narrow. *Id.* at 136. Instead, the Court explained that "a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." *Id.* at 134.

Thus, because the test announced in *Lexmark* broadened the category of individuals able to sue under 1125(a), Hilti and RectorSeal's argument that FireBlok must own the UL certification mark is even more unavailing.[2] Indeed, although *Lexmark* mainly contemplated a false advertising claim under subsection 1125(a)(1)(B), the Court explained that the classic plaintiff in a Lanham Act case is one who is directly injured by a competitor's false statements about its own goods or the goods of the plaintiff, and thereby induces customers to choose its goods over the plaintiff's goods. *Id.* at 137. That is precisely what FireBlok claims here. FireBlok is, therefore, a proper plaintiff under the Lanham Act. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) (explaining that competitors are proper plaintiffs in a Lanham Act claim).

Hilti and RectorSeal also briefly contend that FireBlok's allegations relevant to its false association claim are conclusory. Dkt. 121, at 9 ("Furthermore, Plaintiff provides nothing more than generalized allegations, again devoid of any detail, regarding its claim of unfair competition by false representation under 15 U.S.C. § 1125(a)(1)(A) and its alleged injury."); Dkt. 126, at 11. Not so. Even under the heightened pleading standard of Rule 9(b), FireBlok's complaint is sufficient.

---

[2] Notably, even if the previous direct-competitor approach stood as good law, FireBlok has sufficiently alleged that its product directly competes with the Firestop Box Insert.

14

FireBlok alleges that it is "in the business of manufacturing and selling fire suppression gaskets for the construction industry." Dkt. 108, ¶ 3. This includes products made under its patent entitled "Systems and Method for Suppressing Fire in Electrical Boxes." *Id.* ¶¶ 12, 15. Furthermore, Hilti's Firestop Box Insert is the same type of product, and Hilti even used the same patent number on its label, which was allegedly designed by RectorSeal. *Id.* ¶¶ 19–22. Furthermore, FireBlok alleges that Hilti and RectorSeal used the UL certification mark on the Firestop Box Insert label between August 1, 2008, and January 28, 2019, even though they were not authorized to do so. *Id.* ¶ 44. Thus, FireBlok has sufficiently alleged the who violated the act (Hilti, and RectorSeal as the designer of the label), where (on the label), and when (from August 1, 2008, to January 28, 2019).

Based on this alleged false association, FireBlok alleges that consumers were likely confused into believing that Hilti's product stood on equal ground, that it was UL certified. *Id.* ¶ 61. At this stage, the factual allegations are sufficient to raise the plausible inference that Hilti and RectorSeal are liable for false association, even under Rule 9(b)'s heightened pleading requirements. Besides, FireBlok alleges that Hilti and RectorSeal's use of the UL certification mark is a false statement because the Firestop Box was *literally* not certified during the relevant time. And literally false statements presumptively cause competitors harm. *Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 510–12 (7th Cir. 2009) ("What these cases mean when they say that proof of literal falsity allows the plaintiff to dispense with evidence that anyone was misled or likely to be misled is

15

that the seller who places an indisputably false statement in his advertising or labeling probably did so for a malign purpose, namely to sell his product by lies, and if the statement is false probably at least some people were misled, and since it was a lie why waste time on costly consumer surveys?").[3]

### b. 15 U.S.C. § 1125(a)(1)(B)

Hilti and RectorSeal next contend that FireBlok has not stated a claim under 15 U.S.C. § 1125(a)(1)(B), which provides a private right of action for false advertising. Dkt. 121, at 3; Dkt. 126, at 4; *Lexmark*, 572 U.S. at 123. "To establish a deceptive advertising claim under § 1125(a)(1) of the Lanham Act, a plaintiff must show that '(1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement.'" *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 833 (7th Cir. 2019) (quoting *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018)). Hilti and RectorSeal cite to *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) for the elements to a false advertising claim under the Lanham Act. But unlike *Board of Forensic Document Examiners*, *Eli Lilly*, and this case, *Hot Wax* was an appeal from summary judgment. *Hot Wax*, 191 F.3d at 816. And what must be proven at

---

[3] Hilti and RectorSeal are adamant that what FireBlok contends is that it sets the certification criteria for UL. FireBlok asserts no such thing. FireBlok merely alleges that RectorSeal's letter to UL withdrew the Multiple Listing, thereby ending the Firestop Box Insert's ability to bear the UL certification mark. That is a far cry from alleging the ability to set standards for another company.

16

summary judgment is not the same question as what must be pleaded in the complaint. *Lincoln Diagnostics, Inc. v. Hollister-Stier Labs*, No. 08-2062, 2009 U.S. Dist. LEXIS 138101, at *6 (C.D. Ill. 2009) (rejecting the same argument).

The Seventh Circuit has recognized two types of false advertising claims under the Lanham Act: "those that are literally false and those that are literally true but misleading." *Eli Lilly*, 893 F.3d at 382. If the allegedly false advertising is literally false, extrinsic evidence of actual consumer confusion is unnecessary. *Id.* "The inquiry asks whether the defendant made an explicit representation of fact that on its face conflicts with reality." *Id.*

Here, FireBlok has sufficiently stated a claim of false advertising under the Lanham Act. As explained above, FireBlok's complaint, and its reasonable inferences, allege that Hilti and RectorSeal affixed the UL certification mark to the Firestop Box Insert label from August 2008 to January 2019, when it was not authorized by UL to do so. That is enough to plausibly allege a statement that is literally false on its face. Thus, because plaintiffs need not present evidence of actual consumer confusion in literal falsity cases, the only further requirement is that FireBlok has alleged that the literal falsity occurred in a commercial advertisement. *Bd. of Forensic Document Exam'rs*, 922 F.3d at 833 (setting out the pleading requirements for a false advertising claim). Here, FireBlok has sufficiently alleged that the falsity was advertised both on Hilti's website and on its product label. Dkt. 108, ¶ 25 ("Defendant's website also shows the UL Certification mark and advertising that the Firestop Box Insert is UL certified.").

17

Other than incorrectly arguing that FireBlok must meet all elements of the statute at the pleading stage, Hilti and RectorSeal contend that FireBlok's complaint is insufficient because it failed to allege that UL considered the Firestop Box Insert to be noncompliant. Dkt. 121, at 5; Dkt. 126, at 6. In support, they cite *Board-Tech Electronic Co. v. Eaton Corp.*, 737 F. App'x 556 (2d Cir. 2018), an unpublished opinion from the Second Circuit. Though an out-of-circuit, unpublished opinion is not particularly persuasive, even that case doesn't help Hilti and RectorSeal. In *Board-Tech*, the court explained that the UL certification mark "signifies only that the product has been (and continues to be) certified by UL." *Id.* at 559. "Board-Tech concedes that Eaton has permission to display the mark." *Id.* But here, FireBlok alleges that the Firestop Box Insert was not certified by UL from August 2008 to January 2019, and that the label nonetheless advertised that it was certified. Thus, FireBlok alleges falsity in the one thing that the *Board-Tech* court said the certification mark stands for.

Hilti and RectorSeal also argue that FireBlok does not allege through what commercial advertisement they allegedly violated the Lanham Act. Dkt. 121, at 5; Dkt. 126, at 6. That is not true. FireBlok alleged that Hilti advertised the UL certification mark on its website. Hilti sees that as insufficient because the attachment to the complaint that shows the website also lists May 17, 2019, as the date. Dkt. 126, at 7. Because that date is after the date on which Hilti once again was allowed to use the UL certification mark, Hilti sees this attachment as insufficient. RectorSeal makes the same argument but further contends that the

18

Seventh Circuit does not recognize contributory false advertising claims under the Lanham Act. Dkt. 121, at 8.

RectorSeal is correct that the Seventh Circuit has not recognized contributory false advertising claims. *Telebrands Corp. v. My Pillow, Inc.*, 2019 U.S. Dist. LEXIS, at *8 (N.D. Ill. April 30, 2019) ("This novel contributory false advertising claim under the Lanham Act has not been adopted by either the Seventh Circuit or any other circuit."). And FireBlok includes no allegations to explain how the Hilti website has anything to do with RectorSeal. To be sure, FireBlok alleges that RectorSeal designs the Firestop Box Insert's product label, but it alleges no facts that connect RectorSeal to Hilti's website. Thus, RectorSeal cannot be held liable for any purported false advertising on Hilti's website.

The same cannot be said for Hilti. It notes that the screenshot of Hilti's website that FireBlok attached to the complaint shows a date in May 2019, well after Hilti was once again permitted to use the UL certification mark. *See* dkt. 109-1, at 3 (Pl.'s Exhibit A). That is not dispositive, however. This is the pleading stage, not the proving stage. FireBlok's allegation that Hilti used the UL certification mark on its website, combined with the allegations that Hilti used the certification mark on its labeling throughout the unauthorized period creates the reasonable inference that Hilti also displayed the mark on its website during that period. Discovery may turn in Hilti's favor, but at this stage, FireBlok's complaint sufficiently pleads a plausible claim for false advertising under the Lanham Act.

As to Hilti, therefore, the Court denies the motion for judgment on the pleadings. The Court must also deny RectorSeal's motion to dismiss FireBlok's false advertisement claim against it as well. In its motion, RectorSeal argued that it cannot be held liable for any false advertising on Hilti's website. But that argument fails to contemplate whether the product label itself, which RectorSeal allegedly designed, counts as a commercial advertisement. Hilti and RectorSeal no doubt designed the label to entice customers into purchasing the product.[4] Indeed, what other reason could they have for including the UL certification mark on the label? But RectorSeal failed to argue that the label does not count as a commercial advertisement, and so it has failed to meet its burden of establishing the insufficiency of the complaint. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency."); *cf. POM Wonderful*, 573 U.S. at 107 ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling."); *Schering-Plough Healthcare Prods.*, 586 F.3d at 503 (noting that, under the Lanham Act, "There is no exemption for labels").

## VII. Conclusion

For the reasons explained below, Hilti's motion for judgment on the pleadings and RectorSeal's motion to dismiss are granted in part and denied in part:

---

[4] Discovery may reveal that RectorSeal's involvement in designing the label was limited and FireBlok's claim against it amounts to an unrecognized claim for contributory false advertising. If that is what discovery reveals, then RectorSeal may move for summary judgment. At this stage, however, the allegations are enough to move forward.

20

(1) The Court grants Hilti's motion for judgment on the pleadings on FireBlok's Uniform Deceptive Trade Practices Act claim;

(2) The Court grants Hilti's motion for judgment on the pleadings on FireBlok's Illinois Consumer Fraud Act claim;

(3) The Court denies Hilti's motion for judgment on the pleadings as to FireBlok's false association claim under 15 U.S.C. § 1125(a)(1)(A);

(4) The Court denies Hilti's motion for judgment on the pleadings as to FireBlok's false advertising claim under 15 U.S.C. § 1125(a)(1)(B);

(5) The Court dismisses FireBlok's Uniform Deceptive Trade Practices Act claim against RectorSeal with prejudice;

(6) The Court dismisses FireBlok's Illinois Consumer Fraud Act claim against RectorSeal with prejudice;

(7) The Court denies RectorSeal's motion to dismiss FireBlok's false association claim under 15 U.S.C. § 1125(a)(1)(A); and,

(8) The Court denies RectorSeal's motion to dismiss FireBlok's false advertising claim under 15 U.S.C. § 1125(a)(1)(B).


Date:  December 21, 2021

Honorable Iain D. Johnston
United States District Judge

21