# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| FIREBLOK IP HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>HILTI, INC., and RECTORSEAL, LLC<br><br>    Defendants. | Civil Action No.: 3:19-cv-50122<br><br>**JURY TRIAL DEMANDED** |

## THIRD AMENDED COMPLAINT

Plaintiff, FireBlok IP Holdings, LLC (FireBlok) by its attorneys, as and for its Third Amended Complaint against Defendants, Hilti Inc., and RectorSeal, LLC, alleges as follows:

### The Parties

1. Plaintiff is a corporation organized and existing under the laws of the State of Georgia with its principal place of business at Suite 200, 5 Concourse Parkway, Atlanta, Georgia.

2. Plaintiff was formed on February 29, 2016, as a result of a total asset transfer from Intumescent Technologies, LLC ("Intumescent").

3. Plaintiff has been in the business of manufacturing and selling fire suppression gaskets for the construction industry since its formation, and continues manufacturing and selling fire suppression gaskets today.

4. On information and belief, Defendant Hilti, Inc. ("Hilti") is a corporation organized and existing under the laws of the State of Oklahoma with its principal place of business at 7250 Dallas Parkway, Plano Texas.

5. On information and belief, Defendant RectorSeal, LLC ("RectorSeal," collectively with Hilti "Defendants") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 2601 Spenwick Dr., Houston, Texas 77055.

6. Defendants sell their products throughout the United States, including in this judicial district.

7. Upon information and belief, Defendants regularly and systematically transact business in the State of Illinois and in this judicial district.

8. Upon information and belief, Defendant Hilti also maintains stores in this judicial district.

## Jurisdiction and Venue

9. This Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1332 (a suit between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs), § 1367 (supplemental jurisdiction), § 1331 (federal question) and 1338 (trademarks).

10. This Court has personal jurisdiction over Defendants, because Defendants have sufficient minimum contacts within the State of Illinois and this judicial district, pursuant to due process and/or 735 ILCS 5/2-209, as Defendants have purposefully availed themselves of the privileges of conducting business in the State of Illinois by regularly conducting and soliciting business within the State of Illinois and within this judicial district, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Illinois and this judicial district.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**BACKGROUND**

12. On June 26, 2001, U.S. Patent No. 6,252,167 ("the '167 patent"), entitled "System and Method for Suppressing Fire in Electrical Boxes," was duly and legally issued by the United States Patent and Trademark Office, naming Elmer Algin Rose the inventor.

13. On July 22, 2002, Mr. Rose assigned his rights in the '167 patent to Intumescent who subsequently assigned its rights in the '167 patent to Plaintiff on February 29, 2016.

14. The '167 patent discloses a method of suppressing electrical fires in electrical boxes using intumescent material.

15. Plaintiff makes, offers for sale and sells products that are described by the '167 patent.

16. Defendant markets, offers for sale and sells a product known as the Firestop Box Insert throughout the United States, including in this judicial district.

17. The Firestop Box Insert is advertised as an intumescent box insert designed to help protect electrical outlet boxes.

18. Pursuant to 35 U.S.C. § 287, "persons making, offering for sale or selling within the Unites States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent."

19. Upon information and belief, at least as early as October, 2017, Defendant placed the following on its Firestop Box Insert labels: "U.S. Patent No. 6,252,167".

20. Hilti's Firestop Box Insert labels also contain the UL Certification mark indicating that the product is certified by UL LLC, formerly Underwriters Laboratories ("UL").

21. Hilti's Firestop Box Insert labels also contain the FM APPROVED mark indicating that the product is certified by FM Approvals ("FM").

22. UL and FM test products to demonstrate that the product meets prescribed standards for quality and safety.

23. The UL website explains, "As the global safety science leader, UL helps companies to demonstrate safety, enhance sustainability, strengthen security, deliver quality, manage risk and achieve regulatory compliance."

24. The FM website says, "No matter the product or the complexity of the test program, we will work with you to evaluate your product against the highest level of testing standards to earn the FM APPROVED mark."

25. Below are examples of the labels for the Firestop Box Insert, each showing a reference to the '167 patent, the UL certification mark and the FM APPROVED mark.



26. Hilti asserts that it "does not design labels for the Firestop Box Insert." (*See* Hilti's response to Interrogatory No. 2, attached hereto as Exhibit F.) Rather, "Hilti informally collaborates with RectorSeal, LLC on the final design and provides RectorSeal, LLC with its company branded artwork for the Firestop Box Insert." (*Id.*)

27. In a previous litigation, RectorSeal asserted that "as a general proposition, [RectorSeal] does not order product labels for its multiple listing products; rather such labels are typically provided by the multiple listing customer. (*See* RectorSeal's response to Request for Production No. 21 in RectorSeal, LLC v. FireBlok IP Holdings, LLC, 19-cv-504 -SDJ, in the Eastern District of Texas, attached hereto as Exhibit G.)

28. Defendant Hilti's website advertising the Firestop Box Insert, attached hereto as Exhibit A, lists the '167 patent as a "Feature" of the Firestop Box Insert.

29. Defendant Hilti's website also shows the UL Certification mark and advertises that the Firestop Box Insert is UL certified.

30. Defendant Hilti's website also shows the FM APPROVED mark and advertises that the Firestop Box Insert is FM APPROVED.

31. In such cases where a manufacturer has a UL certification for a product, a third-party who purchases the certified product and sells it under its own label can obtain a UL certification based on the manufacturers UL certification, in effect "piggy-backing" on the manufacturers UL certification.

32. UL calls this service the Multiple Listing Service.

33. UL's Multiple Listing Service is a situation where a company who does not make the product wants to have their name appear on the product and the product certified for a different company.

34. UL advertises its Multiple Listing Service as a way to "streamline[] the process of offering the ability to use the UL Mark on *identical* UL Certified products under different brand names." (https://www.ul.com/offerings/multiple-listing-service-ul-certified-products) (emphasis added).

- 5 -

35. UL tracks the products covered under a Multiple Listing Service using a document called a correlation sheet.

36. Correlation sheets list all base products and Multiple Listed products between two companies.

37. FM has a similar program called the "Private Labeler/Trade Agent process."

38. FM advertises that "The FM Approvals Private Labeler/Trade Agent process enables original equipment manufacturers (OEMs) of FM Approved products to enter into a private label agreement with someone else and retain the FM Approvals' certification." (https://www.fmapprovals.com/additional-certifications/private-labeling)

39. Hilti's Firestop Box Insert product obtained its UL certification through UL's Multiple Listing Service.

40. The correlation sheets for Hilti products that are Multiple Listed with RectorSeal products is attached as Exhibit C ("Hilti Correlation Sheets").

41. The Hilti Correlation Sheets show that Hilti's Firestop Box Insert products were initially Multiple Listed with RectorSeal's Metacaulk Box Guard products on May 15, 2006.

42. On August 1, 2008, RectorSeal sent UL the letter attached as Exhibit D.

43. In the August 1, 2008 letter, RectorSeal asked UL to withdraw the Multiple Listing for Hilti's Firestop Box Insert product.

44. In the August 1, 2008 letter, RectorSeal told UL, "RectorSeal will no longer be manufacturing the Fire[stop] Box Inserts for Hilti."

45. As a direct result of the August 1, 2008 letter, UL withdrew the Multiple Listing for Firestop Box Insert.

46. The Hilti Correlation Sheets show UL's withdrawal of Hilti's Multiple Listing for Firestop Box Insert with RectorSeal's Metacaulk Box Guard products on August 1, 2008.

47. On January 17, 2019, RectorSeal sent UL the letter attached as Exhibit E.

48. In the January 17, 2019 letter, RectorSeal asked that Hilti's Firestop Box Insert be Multiple Listed with RectorSeal's Metacaulk Box Insert product.

49. The Hilti Correlation Sheets show that Hilti's Firestop Box Insert products were again Multiple Listed with RectorSeal's Metacaulk Box Guard products on January 28, 2019.

50. From August 1, 2008, until January 28, 2019, Hilti's Firestop Box Insert products were not Multiple Listed with Metacaulk Box Guard Products.

51. From August 1, 2008, until January 28, 2019, Hilti's Firestop Box Insert Products were not authorized to contain the UL Certification mark.

52. Hilti's Firestop Box Insert contained the UL Certification mark continuously from 2006.

53. Hilti's Firestop Box Insert contained the UL Certification mark during the time that Hilti's Firestop Box Insert was not authorized to contain the UL Certification mark.

54. On information and belief, Hilti's Firestop Box Insert product obtained its FM APPROVED mark through FM's Private Labeler/Trade Agent process with RectorSeal.

55. The FM's certification was pulled from Hilti's Firestop Box Insert in 2009.

56. Hilti and RectorSeal did not entire into a Private Labeler/Trade Agent Agreement with FM until March 2019.

57. Hilti's Firestop Box Insert label was never redesigned to remove the FM logo, or FM APPROVED mark from 2009 through 2019.

58. Hilti's Firestop Box Insert contained the FM APPROVED mark during the time that Hilti's Firestop Box Insert was not certified by FM.

59. On January 23, 2019, Plaintiff filed a lawsuit against Defendant in the Eastern District of Texas, 2:19-cv-00023, claiming that Defendant was infringing the '167 patent ("Texas Action").

60. In its Answer in the Texas Action, attached hereto as Exhibit B, Defendant denied that it infringes the claims of the '167 patent.

61. Defendant also propounded Counterclaims in the Texas Action seeking, among other things, a declaration that it does not infringe the '167 patent, because its products do not practice all elements of the claims of the '167 patent, Ex. B at 11, paragraph 9.

## COUNT I –UNIFORM DECEPTIVE TRADE PRACTICES (DISMISSED), 815 ILCS 510/1, *et seq.*

62. Plaintiff incorporates by reference paragraphs 1 through 61 of its Complaint as if set forth herein.

63. In the Texas Action, Defendant claims that its Firestop Box Insert products do not practice the invention of the '167 patent, Ex. B at 11, paragraph 9, even though it marks its Firestop Box Insert products with the '167 patent number for the purpose of telling consumers that its Firestop Box Insert products practice the invention of the '167 patent.

64. Defendant has caused a likelihood of confusion over the certification of Defendant's Firestop Box Insert products.

65. Defendant has caused a likelihood of confusion over an affiliation or connection between Plaintiff and Defendant.

66. Defendant has represented that the Firestop Box Insert products are of a particular quality that they are not.

67. Plaintiff has been, and continues to be harmed by Defendant's deceptive trade practices.

68. As such, Defendant is in violation of Illinois' Uniform Deceptive Trade Practice Act.

69. Pursuant to 815 ILCS 510/3, Plaintiff is entitled to an injunction against Defendant's sale of the Firestop Box Insert products.

### COUNT II –UNIFORM DECEPTIVE TRADE PRACTICES, 815 ILCS 510/1, *et seq.* (DISMISSED)

70. Plaintiff incorporates by reference paragraphs 1 through 69 of its Complaint as if set forth herein.

71. Defendants were equally responsible for placing the UL Certification mark on the Firestop Box Insert continuously since 2008.

72. Defendants were equally responsible for placing the UL Certification mark on the Firestop Box Insert during the time that Hilti's Firestop Box Insert was not authorized to contain the UL Certification mark.

73. Defendants have caused a likelihood of confusion over the UL certification for the Firestop Box Insert products by using the UL Certification mark on Hilti's products without being authorized to place the UL Certification mark on the Firestop Box Insert products.

74. Defendants use the UL Certification mark to advertise the advantage of Hilti's Firestop Box Insert products.

75. Plaintiff has been, and continues to be harmed by Defendants' deceptive trade practices.

76. As such, Defendants are in violation of Illinois' Uniform Deceptive Trade Practice Act.

77. Pursuant to 815 ILCS 510/3, Plaintiff is entitled to an injunction against Defendants' sale of the Firestop Box Insert products.

### COUNT III – ILLINOIS CONSUMER FRAUD AND DECEPTIVE (DISMISSED) BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq*.

78. Plaintiff incorporates by reference paragraphs 1 through 77 of its Complaint as if set forth herein.

79. In the Texas Action, Defendant claims that its Firestop Box Insert products do not practice the invention of the '167 patent, Ex. B at 11, paragraph 9, even though it marks its Firestop Box Insert products with the '167 patent number for the purpose of telling consumers that its Firestop Box Insert products practice the invention of the '167 patent.

80. Defendant has represented that the Firestop Box Insert products are of a particular standard and quality, based on the '167 patent, which they are not.

81. Defendant also employs deceptive practices described in Section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2).

82. Plaintiff has been, and continues to be harmed by Defendant's actions.

83. As such, Defendant is in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

84. Plaintiff's damages are in excess of $75,000.

### COUNT IV – ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq*. (DISMISSED)

85. Plaintiff incorporates by reference paragraphs 1 through 84 of its Complaint as if set forth herein.

86. Defendants were equally responsible for placing the UL Certification mark on the Firestop Box Insert continuously since 2008.

87. Defendants were equally responsible for placing the UL Certification mark on the Firestop Box Insert during the time that Hilti's Firestop Box Insert was not authorized to contain the UL Certification mark.

88. Defendants employed deceptive practices described in Section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2).

89. Defendants' use the UL Certification mark to advertise the advantage of Hilti's Firestop Box Insert products.

90. Plaintiff has been, and continues to be harmed by Defendants' actions.

91. As such, Defendants are in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

92. Plaintiff's damages are in excess of $75,000.

## COUNT V –FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125 (DISMISSED)

93. Plaintiff incorporates by reference paragraphs 1 through 92 of its Complaint as if set forth herein.

94. In the Texas Action, Defendant claims that its Firestop Box Insert products do not practice the invention of the '167 patent, Ex. B at 11, paragraph 9, even though it marks its Firestop Box Insert products with the '167 patent number for the purpose of telling consumers that its Firestop Box Insert products practice the invention of the '167 patent.

95. Defendant has made false and misleading descriptions of fact about its Firestop Box Insert products.

96. Defendant has made false and misleading representations of fact about its Firestop Box Insert products.

97. Defendant's misleading descriptions of fact and misleading representations of fact are likely to cause confusion.

98. Defendant's misleading descriptions of fact and misleading representations of fact are likely to create a false connection and association between Plaintiff and Defendant.

99. Defendant's misleading descriptions of fact and misleading representations of fact misrepresent characteristics and qualities of Defendant's Firestop Box Inserts.

100. Plaintiff has been, and continues to be harmed by Defendant's misleading descriptions of fact and misleading representations of fact.

101. As such, Defendant is in violation of 15 U.S.C. § 1125(a).

## COUNT VI – FALSE MARKING, 35 U.S.C. § 292 (DISMISSED)

102. Plaintiff incorporates by reference paragraphs 1 through 101 of its Complaint as if set forth herein.

103. Defendant marks its Firestop Box Insert products with the '167 patent number for the purpose of telling its consumers that its Firestop Box Insert is a patented product.

104. Defendant also marks its Firestop Box Insert product with the '167 patent number for the purpose of telling its consumers that its Firestop Box Insert practices the invention of the '167 patent.

105. Defendant marks its products with the '167 patent even though it has alleged in the Texas Action that its Firestop Box Insert does not practice the invention of the '167 patent, Ex. B at 11, paragraph 9.

106. Defendant's marking of its Firestop Box Insert product with the '167 patent when its product does not practice the invention of the '167 patent constitutes false marking under 35 U.S.C. § 292.

107. Plaintiff has, and continues to suffer competitive damages as a result of Defendant's false marking by having to compete with Defendant who advertises that its Firestop Box Insert

practices the invention of the '167 patent, while alleging that the Firestop Box Insert does not practice the '167 patent.

108. Pursuant to 35 U.S.C. § 292(b), Plaintiff is entitled to be compensated for the recovery of its damages for Defendant's false marking.

### COUNT VII –FALSE DESCRIPTION, 15 U.S.C. § 1125
### UL CERTIFICATION MARK

109. Plaintiff incorporates by reference paragraphs 1 through 108 of its Complaint as if set forth herein.

110. The UL Certification mark is a symbol that represents approval by UL based on certain criteria.

111. The UL Certification mark is a symbol that represents that the product to which the Mark is affixed is of a certain quality.

112. Defendants are equally responsible for the design and production of the label for the Firestop Box Insert.

113. The label for the Firestop Box Insert was affixed with the UL Certification mark continuously since 2008.

114. The label for the Firestop Box Insert was affixed with the UL Certification mark during the time that the Firestop Box Insert was not authorized to contain the UL Certification Mark.

115. As a result of affixing the UL Certification mark to the Firestop Box Insert during the time that the Firestop Box Insert product was not authorized to contain the UL Certification Mark, Defendants have made false and misleading descriptions of fact about the Firestop Box Insert.

116. As a result of affixing the UL Certification mark to the Firestop Box Insert during the time that the Firestop Box Insert was not authorized to contain the UL Certification mark, Defendants have made false and misleading representations of fact about the Firestop Box Insert.

117. Defendants' misleading descriptions of fact and misleading representations of fact have likely caused confusion.

118. Defendants' misleading descriptions of fact and misleading representations of fact have likely caused mistake.

119. Defendants' misleading descriptions of fact and misleading representations of fact have likely deceived as to UL's association, sponsorship and approval.

120. Defendants' commercial advertising or promotion of the Firestop Box Insert with the UL Certification mark during the time that the Firestop Box Insert was not authorized to contain the UL Certification mark misrepresented the nature, characteristics, and quality of the Firestop Box Insert.

121. Plaintiff has been, harmed by Defendants' misleading descriptions of fact and misleading representations of fact about the Firestop Box Insert.

122. Defendants are in violation of 15 U.S.C. § 1125(a)(1)(A) because their misuse of the UL Certification mark is likely to cause confusion, mistake or deceive as to the affiliation, connection or association of the Firestop Box Insert with UL.

123. Defendants are in violation of 15 U.S.C. § 1125(a)(1)(B) because their misuse of the UL Certification mark misrepresents the nature and quality of the Firestop Box Insert in commercial advertising and promotion through the use of the mark on the Firestop Box Insert label and on the website.

## **COUNT VIII –FALSE DESCRIPTION, 15 U.S.C. § 1125**
## **FM APPROVED MARK**

124. Plaintiff incorporates by reference paragraphs 1 through 123 of its Complaint as if set forth herein.

125. The FM APPROVED mark is a symbol that represents approval by FM based on certain criteria.

126. The FM APPROVED mark is a symbol that represents that the product to which the mark is affixed is of a certain quality.

127. Defendants are equally responsible for the design and production of the label for the Firestop Box Insert.

128. The label for the Firestop Box Insert was affixed with the FM APPROVED mark continuously since 2009.

129. The label for the Firestop Box Insert was affixed with the FM APPROVED mark during the time that the Firestop Box Insert was not authorized to contain the FM APPROVED mark.

130. As a result of affixing the FM APPROVED mark to the Firestop Box Insert during the time that the Firestop Box Insert product was not authorized to contain the FM APPROVED mark, Defendants have made false and misleading descriptions of fact about the Firestop Box Insert.

131. As a result of affixing the FM APPROVED mark to the Firestop Box Insert during the time that the Firestop Box Insert was not authorized to contain the FM APPROVED mark, Defendants have made false and misleading representations of fact about the Firestop Box Insert.

132. Defendants' misleading descriptions of fact and misleading representations of fact have likely caused confusion.

133. Defendants' misleading descriptions of fact and misleading representations of fact have likely caused mistake.

134. Defendants' misleading descriptions of fact and misleading representations of fact have likely deceived as to FM's association, sponsorship and approval.

135. Defendants' commercial advertising or promotion of the Firestop Box Insert with the FM APPROVED mark during the time that the Firestop Box Insert was not authorized to contain the FM APPROVED mark misrepresented the nature, characteristics, and quality of the Firestop Box Insert.

136. Plaintiff has been, harmed by Defendants' misleading descriptions of fact and misleading representations of fact about the Firestop Box Insert.

137. Defendants are in violation of 15 U.S.C. § 1125(a)(1)(A) because their misuse of the FM APPROVED mark is likely to cause confusion, mistake or deceive as to the affiliation, connection or association of the Firestop Box Insert with FM.

138. Defendants are in violation of 15 U.S.C. § 1125(a)(1)(B) because their misuse of the FM APPROVED mark misrepresents the nature and quality of the Firestop Box Insert in commercial advertising and promotion through the use of the mark on the Firestop Box Insert label and on the website.

WHEREFORE, Plaintiff respectfully requests the following relief:

A. An adjudication that Defendants have engaged in false descriptions under 15 U.S.C. § 1125;

B. An award of damages to be paid by Defendants adequate to compensate Plaintiff for Defendants' actions, including interest, costs, expenses and an accounting of all of Defendants'

products that were marked with the UL Certification mark during the time that the Firestop Box Insert was not authorized to contain the UL Certification mark;

  C. An award of damages to be paid by Defendants adequate to compensate Plaintiff for Defendants' actions, including interest, costs, expenses and an accounting of all of Defendants' products that were marked with the FM APPROVED mark during the time that the Firestop Box Insert was not authorized to contain the FM APPROVED mark;

  D. An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues presented in this Complaint.

DATED: March 24, 2022

Respectfully submitted by,

/s/ Neil A. Benchell
Neil A. Benchell
nbenchell@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Phone: (302) 351-4400

*Attorney for Plaintiff FireBlok IP Holdings, LLC.*

**CERTIFICATE OF SERVICE**

    The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic filing on March 24, 2022.

                                                           */s/ Neil Benchell*
                                                           Neil Benchell