IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| FireBlok IP Holdings, LLC, | |
| Plaintiff, | Case No.: 19-cv-50122 |
| v. | Judge Iain D. Johnston |
| Hilti, Inc. and RectorSeal LLC, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

After a long time coming, Hilti, Inc. and RectorSeal, LLC ("the Defendants") move to exclude Plaintiff FireBlok IP Holdings' retained damages expert, Dr. Alexander Krasnikov. When the Defendants first previewed this motion in September 2024, the Court warned all Parties that the only basis for a *Daubert* motion is to challenge the expert's experience or methodology—not to criticize the conclusions or to back-end the argument that, because the conclusions are terrible, the methodology must've been wrong. Dkt. 325, 19:24–20:14. Consistent with that guidance, the Defendants' motion to exclude Dr. Krasnikov's testimony is denied.

**I.   Background**

To briefly summarize the relevant facts for the Defendants' *Daubert* motion, FireBlok retained Dr. Alexander Krasnikov to testify to damages allegedly sustained by the Defendants' false advertising and false association. *See FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 3:19-cv-50122, 2021 U.S. Dist. LEXIS 243052 (N.D. Ill. Dec. 21,

1

2021); *FireBlok IP Holdings v. Hilti, Inc.*, No. 19-cv-50122, 2025 U.S. Dist. LEXIS 104044 (N.D. Ill. June 2, 2025). Based on his education, experience, and review of the documents produced in litigation, Dr. Krasnikov reached three opinions.

(1) **Hilti and RectorSeal's Profits:** From 2008 to 2019, the Defendants' sales for Firestop Box Inserts reached over $316 million. According to industry-standard profit margins, the Defendants likely net about 31% of this figure ($98 million dollars). Dkt. 340-2, ¶ 98.

(2) **FireBlok's Market Share:** Without the Defendants' presence in the market, FireBlok would've held 3.82% of the market share for intumescent inserts for electrical outlets and switchboxes. Alternatively, those sales may have evenly split between three major competitors, making FireBlok's relative market share about 33.3%. *Id.*, ¶¶ 78–79.

(3) **FireBlok's Lost Profits:** From 2012 to 2019, but now adjusted for inflation, FireBlok lost between $4.2 million and $37 million in profits to the Defendants. *Id.*, ¶¶ 78–84.

**II. Analysis**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 lists the requirements for the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

b) the testimony is based on sufficient facts or data;

c) the testimony is the product of reliable principles and methods; and

d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Kumho Tire Company, Ltd. v. Carmichael*, the Supreme Court extended *Daubert*'s standards for reliable scientific testimony to non-scientific testimony based on technical or other specialized knowledge. 526 U.S. 137, 141 (1999). The overarching aim of the court's "gatekeeping" function under Rule 702, *Kumho* explained, is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. To fulfill their gatekeeping role, courts must evaluate (a) the proposed expert's qualifications, (b) the reliability of the expert's methodology, and (c) the relevance of the expert's testimony so that it assists the trier of fact. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021). Courts may also consider whether an expert's methodology is accepted, peer-reviewed, or tested among other experts. But those factors are meant to facilitate—rather than limit—*Daubert*'s central inquiry. *Kumho*, 526 U.S. at 145. The proponent of an expert's testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017).

FireBlok meets this threshold. Dr. Krasnikov is a professor at the Quinlan School of Business at Loyola University Chicago, specializing in marketing strategy,

3

analytics, and intellectual property. Dkt. 340-3, 2. Since receiving his Ph.D. in marketing in 2007, Dr. Krasnikov has continuously researched, published articles, and given lectures on consumer goods marketing and IP strategy. *Id.* at 3; *see generally* Dkt. 340-1. Although he's never testified as an expert in court, Dr. Krasnikov has nearly twenty years of experience as a business school professor, teaching undergraduate, graduate, and Ph.D. students about "data analytics, marketing metrics, customer analytics, marketing research, and strategy." Dkt. 342 at 4 (citing dkt. 342-1 at 15:4–8).

It's true that Dr. Krasnikov isn't specifically versed in the fire suppression industry and that he's never personally prepared a profit/loss statement. But the Defendants never explain why those facts matter. Dr. Krasnikov commonly analyzes profit/loss statements prepared by third parties and, to the extent necessary, filled gaps in his industry-specific knowledge by relying on FireBlok's fire suppression expert. S*ee* Dkt. 340-4, 22:8–12; Dkt. 340-2, ¶ 20. If anything, estimating lost profits for fire suppression products is easier than most other industries. An average consumer upset by the (now shocking) price of eggs may choose a cheaper grocery store, use an alternative product, or go without; whereas, professionals in the fire suppression industry *must* purchase a switchbox and insert to comply with building codes. Dkt. 342-2 at 11.

Finding Dr. Krasnikov generally qualified to opine on damages, the Court separately analyzes each opinion, asking whether the underlying methodologies are sound and reliable. The Defendants object to Dr. Krasnikov's use of the market

4

approach methodology. Dkt. 340, at 2, 13, 16. The Defendants contend that Dr. Krasnikov was required to use either the yardstick or the before-and-after methodology. *Id.* at 3, 14. But the yardstick and the before-and-after methodologies are not the exclusive ways that experts can determine damages. *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493, 521 (S.D.N.Y. 1996). And courts have found the market approach an acceptable methodology. *See Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, 17 CV 1827, 2019 U.S. Dist. LEXIS 198044, at *7 (N.D. Tex. Nov. 14, 2019 (denying *Daubert* motion to strike expert's testimony based on the use of the market approach methodology).

Regardless of the label, reliable opinion testimony under Rule 702 rationally connects each conclusion to some supporting data, including "how" and "why" the expert reached her opinions. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 809 (7th Cir. 2013). A damages expert must present some reasonable basis for his computations, including "a link between the facts or data the expert has worked with and the conclusions the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003).

Dr. Krasnikov's opinions meet this standard. First, in estimating the Defendants' profits, Dr. Krasnikov multiplied their self-reported unit sales by the price per unit (calculating total revenue), then subtracted industry-standard costs as reported in financial and economic databases. Dkt. 340-2, ¶ 98. Second, Dr. Krasnikov compared FireBlok's self-reported 2017–2019 sales to its competitors'

5

publicly reported annual revenue data for the same timeframe. Finding that two competitors make about thirty-five times FireBlok's annual revenue for one product category, Dr. Krasnikov estimates that FireBlok's relative market share for intumescent inserts for electrical outlet and switch boxes is roughly 4%. Dkt. 340-2, ¶ 78. Finally, Dr. Krasnikov calculated FireBlok's lost profits by multiplying the Defendants' unit sales of uncertified products by FireBlok's market share. *Id.*, ¶¶ 78–84. So, the Defendants wrongly assert that Dr. Krasnikov relied on insufficient data, "blindly relied" on client information, and failed to support his methodology. Dkt. 340, 1.

As the Court warned the Parties nearly a year ago, *Daubert* only allows challenges to an expert's *methodology*. *See* Dkt. 325, 19:24–20:14. The Defendants' motion overlooks that restriction. For one, the Defendants challenge the relevance of their own profitability before FireBlok entered the market in 2016. But without some reason to believe this calculation makes Dr. Krasnikov's conclusions *unreliable*, the argument doesn't concern Dr. Krasnikov's methodology. Likewise, to group the remaining arguments by their primary themes, the Defendants maintain that Dr. Krasnikov made implausible assumptions and failed to consider key variables. As a general rule, however, "[t]he fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013). What's more, "questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion, not its admissibility." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,

6

372 F. Supp. 2d 1104, 1119–20 (N.D. Ill. 2005); *Africano v. Atrium Med. Corp.*, 561 F. Supp. 3d 772, 778 (N.D. Ill. 2021) (collecting cases).

Despite that limitation, the Defendants cite *Second Amendment Arms v. City of Chi.*, to show that damages experts must be excluded if their reports make unreasonable or implausibly optimistic assumptions. No. 10-cv-4257, 2020 U.S. Dist. LEXIS 40999, at *31 (N.D. Ill. Mar. 10, 2020 (citing *Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 21 n. 7 (7th Cir. 1979))*; see also Target Mkt. Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1144 (7th Cir. 1998). Fair enough. But Dr. Krasnikov opined on the Defendants' existing sales and FireBlok's lost profits between 2012 and 2019; whereas, *Second Amendment* barred witness testimony on the inherently speculative calculation of *prospective* damages. *See* 2020 U.S. Dist. LEXIS 40999, at 1. It's true that Dr. Krasnikov didn't consider every variable conceivably affecting market share—such as FireBlok's manufacturing capacity, profit-sharing agreements, and any promotional discounts in the relevant timeframe. *See* Dkt. 340 at 10–12. But every analysis makes some assumptions. *Daubert* demands those assumptions are supported by reason. And, in this case, they are.

Dr. Krasnikov's lost profit analysis turns on FireBlok's past performance in the market. After analyzing manufacturer market power, product offerings and prices over time—and further discussing the market with FireBlok—Dr. Krasnikov applied that data to a series of calculations plausibly based on market realities. Dkt. 340-2, ¶ 23. That's enough for *Daubert* purposes. In fact, the Seventh Circuit essentially endorsed Dr. Krasnikov's methodology in *Cates v. Morgan Portable Bldg. Corp.*,

7

stating that the best measure of consequential damages is "a party's own track record." 591 F.2d 17, 21 (7th Cir. 1979). The Defendants selectively abridge that quote to suggest that "the business used as a standard must be as nearly identical to the plaintiffs as possible." *Id.* But that guidance only applies when historical data isn't available for the expert's analysis. *See id.* (calling comparative analysis the "second-best measure" of lost profits). To the extent the Defendants disagree with Dr. Krasnikov and the Seventh Circuit, they remain free to challenge his credentials, data, and methodology on cross-examination.

As the Court has often commented, *Daubert* motions have become a near metaphysical certainty in civil litigation. *See Daval v. Zahtz*, No. 21-cv-50405, 2025 U.S. Dist. LEXIS 129150, at *5 (N.D. Ill. July 8, 2025) (collecting cases). To return to *Daubert*'s proper scope, the court reminds litigants that *Daubert* was never intended to replace vigorous cross-examination. 509 U.S. at 596. Nor can it. *See Lapsley v. Xtek, Inc.*, 689 F.3d 802, 814 (7th Cir. 2012). The Defendants' remaining arguments—noting, for instance, that Dr. Krasnikov doesn't have experience as a CPA or in forensic accounting and didn't use specific lost-profit calculation methods or conduct interviews—must be addressed by the trier of fact another day. *E.g.* Dkt. 340, 2–4.

### III. Conclusion

The *Daubert* motion to exclude Dr. Krasnikov [340] is denied for those reasons.

Entered: August 4, 2025          By:_____
                                                     Iain D. Johnston
                                                     U.S. District Judge