## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

| | |
|---|---|
| FIREBLOK IP HOLDINGS, LLC, | |
| *Plaintiff,* | |
| v. | Case No.: 19CV50122 |
| HILTI, INC. AND RECTORSEAL, LLC, | |
| *Defendants.* | JUDGE IAIN D. JOHNSTON |

## MEMORANDUM OPINION AND ORDER

After nearly seven years and over three hundred and sixty docket entries, just two Lanham Act claims remain in this action: (1) false advertising and (2) false association. Defendants Hilti, Inc. and RectorSeal, LLC move for summary judgment as to both claims. Dkt. 352. They also move, in the alternative, for partial summary judgment as to FireBlok's claim for lost profits for certain years before FireBlok's existence. Dkt. 353. For the following reasons, Defendants' motion for summary judgment is granted in part and denied in part. As the Court indicated long ago, this action is fit for trial.

### Legal Standard

As the parties know from their previous brush with summary judgment in this action, summary judgment must be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are only those that affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* Summary judgment is required if the nonmoving party can't "establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of showing there is no genuine dispute as to any material fact. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).

Indeed, the movant must either demonstrate "an absence of evidence supporting an essential element of the non-moving party's claim" or present "affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). But the nonmoving party "'must do more than simply show there is some metaphysical doubt as to the material facts.'" *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The Court will view the evidence and make all reasonable inferences in favor of the non-moving party. *Griffin v. City of Milwaukee*, 74 F.3d 824, 825-26 (7th Cir. 1996).

## Background

This action concerns two pieces of equipment used for fire suppression: the Hilti Firestop Box Insert, made by Defendants, and the FireBlok Gasket, manufactured by FireBlok. *See* dkt. 200, Plaintiff's Third Am. Compl. According to FireBlok, Defendants violated the Lanham Act by placing certification marks—"UL" and "FM"—on the Firestop Box Insert despite lacking the authority to do so. *See id.* at ¶¶ 109-138. UL and FM certification marks indicate that the product has

complied with the quality and safety requirements of two product testing companies: UL LLC, formerly Underwriters Laboratories ("UL"), and FM Approvals ("FM"). *See id.* at ¶¶ 20-25.

## Analysis

Defendants face the same problem FireBlok faced in its own motion for summary judgment. This action contains genuine issues of material fact that must be decided by a jury.

Remaining in this action are FireBlok's false *advertising* claim and its false *association* claim. The Court takes each in turn.

### A. False Advertising

A false advertising claim has five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

A statement is actionable if it is literally false or, if literally true or ambiguous, if it has actually misled consumers. *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1088-89 (7th Cir. 1994).

Literal falsehood turns not only on what a statement conveys but also whether that message is false. *Wing Enterprises, Inc. v. Tricam Industries, Inc.*, 511 F.Supp.3d 957, 967 (D. Minn. 2021). As noted in the Court's order on FireBlok's

motion for summary judgment, "'literal' must be understood in the common colloquial sense in which Americans (not realizing, or perhaps not caring, that they are making Fowler turn in his grave) say things like 'I am literally out of my mind.' A 'literal' falsehood is bald-faced, egregious, undeniable, over the top." *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512-13 (7th Cir. 2009). The falsity of the "certification statement" is a genuine dispute of material fact because it could mean either that the Firestop Box Insert met the listing services' safety requirements *or* that they were authorized to use the marks on their product. Dkt. 347 at 8; Dkt. 354, Defendants' Statement of Facts, ¶ 6; Dkt. 357, Plaintiff's Statement of Facts, ¶ 10.

Only false statements about the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods" are actionable. 15 U.S.C. § 1125(a)(1)(B). Plaintiff and Defendants obviously disagree about whether the placement of the certification on the box has anything at all to do with the nature, characteristics, or qualities of the Firestop Box Insert (geographic origin is not in dispute). A reasonable jury could conclude that it does.

Defendants contend that even if the Firestop Box Insert was once certified through multiple listing programs and subsequently lost its certification, a statement that it was nonetheless certified doesn't concern the nature, characteristics or qualities of the box because the box itself never changed. *See* dkt. 353 at 5. This argument must fail because a reasonable jury could easily conclude that a statement about the box's UL and FM certification reflects its nature,

characteristics or qualities. In common parlance, "certified" could describe the nature of an item. For example, a reasonable consumer could think that the nature of a "certified" pre-owned vehicle is different from one that has not been certified. This is true even if FM and UL continued to include the Firestop Box Insert on their respective listings. Certification is of grave importance in the context of fire suppression. *See* dkt. 357, Plaintiff's Statement of Facts, ¶ 12. Describing a product as certified when that certification is in dispute could constitute a literally false statement about the nature of the product.

Defendants don't present arguments about the other elements, and the Court will not make arguments for them. They are waived. *United States v. Berkowitz*, 927 F.2d 1376, 1383 (7th Cir. 1991).

## B. False Advertising Against RectorSeal

Defendants also argue that summary judgment is appropriate as to FireBlok's false advertising claim against RectorSeal. Defendants argue that FireBlok's claim against RectorSeal is really an unrecognized contributory false advertising claim. Dkt. 353 at 6. The Court doesn't need to decide whether to recognize such a claim because FireBlok brings a direct one against RectorSeal. Still, FireBlok's claim must meet each of the elements of a false advertising claim.

A reasonable jury could find that RectorSeal made a false statement in a commercial advertisement. As explained above, the purportedly inappropriate inclusion of the UL and FM marks on the Firestop Box Insert could constitute a false statement about the nature of the insert. A label is a form of advertising. *POM*

5

*Wonderful LLC v. Coca Cola Co.*, 573 U.S. 102, 107 (2014) ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling.") Because the statement could be taken as literally false, there is a presumption of consumer confusion. *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1048 (N.D. Ill. 2016). This deception could influence a consumer's purchasing decision by misleading them into believing the product was approved by UL and FM. *See* dkt. 357, Plaintiff's Statement of Facts, ¶ 16. RectorSeal then caused the false statement to enter interstate commerce by delivering the product to Hilti.

Lastly, a reasonable jury could conclude that FireBlok is likely to be injured by RectorSeal's statement. A false advertising plaintiff must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). A reasonable jury could conclude that RectorSeal's participation in the design of the label directly caused FireBlok's injury because there is enough evidence for a jury to conclude that RectorSeal did more than merely affix the label. *See* dkt. 357, Plaintiff's Statement of Facts, ¶ 4.

Hilti and RectorSeal describes the latter's involvement in the design of the label as "limited to an informal collaboration." Dkt. 353 at 6. FireBlok argues that RectorSeal does more and identifies an email where a RectorSeal employee states, "the labels are designed by us." Dkt. 357 Ex. 6. So, RectorSeal's role in the design of

6

labels is a genuine dispute of material fact. A reasonable jury could conclude that RectorSeal's involvement in the design of the label ultimately caused consumers to purchase the Firestop Box Insert instead of FireBlok's product. Because a reasonable jury could find for FireBlok as to each element of a false advertising claim, Defendants' motion for summary judgment must be denied.

### C. False Association

A false association claim is premised on a statement that causes a consumer to mistakenly believe that a product is approved by another person or entity. 15 U.S.C. § 1125(a)(1)(A). Specifically, FireBlok must show that Defendants: (1) used in commerce (2) a false or misleading description or representation of fact (3) which is likely to cause confusion or mistake, or to deceive, as to the approval of the Firestop Box Insert by UL and FM. *Id.*

There is no dispute that the statement was used in commerce and there is, as explained above, a genuine issue of material fact as to the statement's falsity.

As to the likelihood of confusion, FireBlok again argues that confusion is presumed because the statements are literally false. Defendants counter that the presumption doesn't apply to false association claims. To be sure, there is no binding authority applying the presumption and only scattered out-of-circuit trial court decisions declining to apply it. *See Presby Env't, Inc. v. Advanced Drainage Sys., Inc.*, No. 13-CV-355-LM, 2014 U.S. Dist. LEXIS 138438, at *17-18 (D.N.H. Sept. 30, 2014); *In re Homeadvisor, Inc. Litigation*, No. 16-CV-01849-PAB-KAS 2024 U.S. Dist. LEXIS 165751, at *57 n.34 (D. Colo. Sept. 13, 2024). This Court finds that

the presumption doesn't apply.

As it must, the Court starts with the statutory text. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004); *West v. Hoy*, 126 F. 4th 567, 575 (7th Cir. 2025). A false association claim requires the plaintiff to show that the false or misleading statement "is likely to cause confusion, or to cause mistake, or to deceive…" 15 U.S.C. 1125(a)(1)(A). The text of the statute doesn't require a false advertising claimant to show the same. 15 U.S.C. 1125(a). Yes, false advertising claimants must show that "the statement actually deceived or has the tendency to deceive a substantial segment of its audience," but that element is not on the face of the statute. *Hot Wax,* 191 F.3d at 819. The text of the Lanham Act emphasizes that the statement must be *likely* to cause confusion as a separate element of the claim. Although literal falsehood is strong evidence that a statement will cause confusion, literal falsehood is not enough on its own. 15 U.S.C. § 1125(a)(1)(A).

The text shows that false advertising and false association "are separate and distinct and have different elements needed to assert a prima facie case." 4 McCarthy on Trademarks and Unfair Competition § 27:9.50 (5th ed. May 2024); *see also Lexmark*, 572 U.S. at 122 ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."). Because the asserted "presumption" is not consistent with the statutory language, the Court won't use it.

Absent the presumption, the likelihood of consumer confusion turns on seven factors: "(1) the similarity between the marks; (2) the similarity of the products; (3)

the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to 'palm off' its product as that of another." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019). Likelihood of confusion is generally a question of fact, and it can only be resolved at summary judgment when defendants will clearly prevail. *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 643 (7th Cir. 2001). No factor is dispositive, but "in many cases, the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Id.*

The *Uncommon* factors aren't a perfect fit for this action because FireBlok asserts that the product was wrongly associated with the UL and FM marks themselves. Dkt. 357 at 10. There is only one set of marks and essentially one product. The Court focuses its analysis on actual consumer confusion and Defendants' intent, aware that literal falsity is a triable issue.

Although the consumers of the Firestop Box Insert are sophisticated, there's enough evidence for a reasonable jury to find that consumers are likely to be confused about UL and FM's approval. *See* dkt. 354, Defendants' Statement of Facts, ¶ 33. The most sophisticated consumer—one who looked at the label and then checked the UW and FM listing services—would find the Firestop Box Insert listed. *Id.* at ¶¶ 11, 15, 24. A reasonable jury could find that such a sophisticated consumer would be confused if he or she later found out the product potentially shouldn't have been listed there. *See* dkt. 357, Plaintiff's Statement of Facts, ¶ 19. A sophisticated consumer may be confused if he or she discovered that the product didn't have the

expected FM or UL association. *Id.* Certainly, a fact finder considering a less sophisticated consumer who took the label at its word, could find that the consumer would be confused if it turned out that the promised certifications were unauthorized.

Defendants' intent is a genuine issue of material fact. Defendants argue that they had no intention of deceiving consumers because they immediately tried to rectify the "administrative error" that resulted in the delisting of the Firestop Box Insert. Dkt. 354, Defendants' Statement of Facts, ¶¶ 11-12, 16. On the other hand, FireBlok identifies evidence indicating that Defendants wanted to seek relisting "quietly" and get relisted retroactively. *See* dkt. 357, Plaintiff's Statement of Facts, ¶¶ 22, 24. A reasonable jury looking at this evidence could conclude that Defendants—at least once they became aware of the problems with certification— wanted consumers to think that the product had been continuously certified.

Ultimately, a reasonable factfinder considering all the evidence could find that there is a likelihood of consumer confusion. People in the 21st century expect accurate labels. We—mostly—no longer live in the world of quack doctors, snake oil salesmen, and covered wagon medicine shows. Big Audio Dynamite, *Big Audio Dynamite - Medicine Show (Official Video)*, YouTube (Oct. 25, 2009), https://www.youtube.com/watch?v=BD2kWCfTcaU. The FM and UL marks are important and are used to convey a particular message. A consumer might be confused if any part of that message was misrepresented. *See* Dkt. 354, Defendants' Statement of Facts, ¶¶ 8, 15. A reasonable jury could conclude that part of that

message is that the use of the FM and UL marks on the label was genuinely authorized by the listing services. *See* dkt. 344 at 8; 357, Plaintiff's Statement of Facts, ¶¶ 10, 14. A reasonable jury could also conclude that the disconnect between the expected message and the truth is likely to cause consumer confusion based on Defendants' disputed intent and the possible confusion faced by sophisticated and non-sophisticated consumers alike. This makes for a triable false association claim.

## D. Lost Profits

Lastly, Defendants move for summary judgment as to certain parts of FireBlok's damages claim. The Lanham Act provides that a successful plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. 1117(a).

FireBlok was created in February 2016. It purchased the assets of a predecessor entity that sold its gasket beginning in 2011. Dkt. 354, Defendants' Statement of Facts, ¶ 29. Plaintiff's expert calculated FireBlok's damages starting in 2012. See dkt. 347 at 7. Defendants argue that FireBlok's recovery of actual damages (in the form of lost profits) should be limited to the years it, and not any predecessor entity, sold its gasket. Defendants cite one case in their opening brief and add one case to support this argument in their response brief. *Grip-Pak*, the case cited in the opening brief, provides no support to Defendants' argument because that case concerns damages from a "course of business [plaintiff] deliberately didn't pursue." *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 651 F. Supp.

11

1482, 1504 (N.D. Ill. 1986). In this case, FireBlok's predecessor entity sold the relevant product. On the other hand, *Dewberry Grp., Inc.*, does instruct courts to treat a defendant's affiliated entities as separate from the defendant for purposes of calculating the defendant's profits because of the bedrock principle of corporate separateness. *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 604 U.S. 321, 327 (2025). Thus, the Court will apply the same principles to determine whether a predecessor entity's damages are "damages sustained by the plaintiff."

Summary judgment is the "put up or shut up" moment in litigation. *E.g.*, *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("Summary judgment is the proverbial 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."). Defendants have shown that there is no evidence to support FireBlok's claim for lost profits for the years before FireBlok's own corporate existence. So the burden of production shifts to FireBlok. *See Becker v. Tenenbaum-Hill Assocs.*, Inc., 914 F.2d 107, 110 (7th Cir. 1990) ("If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.").

FireBlok points to an asset purchase agreement and indicates it "believes" its entitled to recover such damages. Dkt. 357 at 14. To be sure, agreements can assign claims held by the prior owner. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1367 (Fed. Cir. 2010); s*ee also In re Turkey Antitrust Litig.*, 727 F. Supp. 3d 756, 765 (N.D. Ill. 2024) (allowing an investment vehicle to bring claims it

purchased from another entity). But, critically, FireBlok provides no agreement. FireBlok rests on the assertion that Defendant "never disputed" their entitlement to such damages. Dkt. 357 at 14. Given that damages are one of the subjects of this motion, this assertion makes little sense. FireBlok offers no evidence indicating that it can recover damages attributable to any other entity. Absent the purported agreement, FireBlok's claim for actual profits is limited to damages it suffered. FireBlok failed to "put up" so it must "shut up" on the issue.

Disgorgement—the ability to recover a defendant's profits—is a form of equitable relief. *Curry v. Revolution Lab'ys, LLC*, No. 17 C 2283, 2023 U.S. Dist. LEXIS 149972, at \*23 (N.D. Ill. Aug. 25, 2023)*, aff'd*, 124 F.4th 441 (7th Cir. 2024); *BASF Corp*, 41 F.3d at 1095 (7th Cir. 1994). Accordingly, there is no right to a jury trial as to any disgorgement award, and the Court must determine the appropriate amount after trial, assuming FireBlok prevails.

Defendants also argue that FireBlok should not be entitled to disgorgement of profits for the years Defendants sold the Firestop Box Insert before FireBlok's existence. The primary function of a trial court "is to make violations of the Lanham Act unprofitable to the infringing party." *4SEMO.com, Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 912 (7th Cir. 2019) (quoting *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985)). "The monetary relief granted by the district court must be great enough to further the statute's goal of discouraging trademark infringement but must not be so large as to constitute a penalty." *Otis Clapp & Son, Inc.*, 754 F.2d at 744. Disgorgement is appropriate if damages are

13

nominal but inappropriate if the remedy creates a windfall. *BASF Corp.*, 41 F.3d at 1096. Until a jury first determines whether Defendants are liable for violating the Lanham Act and then determines what, if any, actual damages exist, it is impossible for the Court to know whether and to what extent disgorgement is appropriate. Accordingly, it denies Defendants' motion as premature.

## Conclusion

In terms of public safety, it might not matter that RectorSeal told UL and FM that it was no longer making the Firestop Box Insert. But this opinion isn't about public safety. It's about the narrow issue of whether a jury could conclude that the continued use of the FM and UL certification marks on the Firestop Boxes' label constituted false advertising or implied a false association. Because a jury could reach such a conclusion, Defendants' motion for summary judgment on the issues must be denied. Defendants haven't shown that summary judgment is appropriate as to disgorgement. However, summary judgment is granted as to FireBlok's claim for lost profits for the years before its existence. FireBlok failed to point to any evidence showing that it could recover such damages. For the above reasons, Defendants' motion for summary judgment is granted in part and denied in part.

By January 26, 2026, the parties must notify the Court via written status report if they would like to hold a settlement conference with the magistrate judge or whether they want to proceed with a final pretrial conference.

14

Entered: January 16, 2026

By: _____
Iain D. Johnston
U.S. District Judge